```
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

Joseph F. Galibois

    v.                                          Civil No. 04-cv-444-JD
                                                    Opinion No. 2007 DNH 052

John Fisher

## O R D E R

In reviewing the pending motions for summary judgment and the procedural history of this case, the court became aware that Joseph F. Galibois's motion to amend his complaint was erroneously denied as having been untimely filed. Because the deadline was extended to January 5, 2007, and he filed the motion on January 4, 2007, the motion was timely. Therefore, the order denying Galibois's motion to file an amended complaint (document no. 37) is vacated. Galibois's motion to amend his complaint (document no. 35) and John Fisher's objection to that motion (document no. 36) are considered on the merits and resolved as follows.

## Background

Galibois, who is proceeding pro se, originally filed his claims against John Fisher, a sergeant in the Nashua, New Hampshire, Police Department, in a petition for redress in state court. When that suit was dismissed, he chose to bring a new

action alleging the same claims in this court rather than pursue his claims on appeal.  His federal complaint, which was filed November 24, 2004, was dismissed based on the Rooker-Feldman doctrine.  That decision was vacated on appeal, based on an intervening change in the law, and the case was remanded for further proceedings here.  Galibois v. Fisher, 2006 WL 827326 (1st Cir. Mar. 31, 2006).

In his proposed complaint, Galibois alleges that on election day in 2004, he was demonstrating against Senator John F. Kerry as a candidate for president based on his opposition to Kerry's plans for handling terrorism and his belief that terrorists would prefer Kerry to George W. Bush.  He expressed his opposition to Kerry by dressing as a terrorist and carrying a pro-Kerry and anti-Bush sign.  He was wearing a costume that consisted of black boots, black sweat pants, a black sweat jacket, a black three-hole ski mask, two empty green ammunition bandoliers, and a plastic toy gun that resembled an AK 47 rifle.

Beginning shortly after 10:00 a.m., Galibois stood at a busy intersection in downtown Nashua, New Hampshire, along with other political demonstrators and supporters of candidates, most of whom supported Kerry.  Galibois alleges that after some initial verbal skirmishing between him and the Kerry supporters, everyone settled into their own positions.  He continued his demonstration

by waving his hand and gesturing politely and with enthusiasm for his candidate.  As a result of the demonstrations, pedestrian traffic at times was diverted off of the sidewalks and traffic slowed or stopped at the intersection.

Galibois states that between 10:00 a.m. and 1:30 p.m., eight Nashua police cars passed the intersection without incident.  Then, two police cars stopped and parked near the intersection.  At about 1:40 p.m., Fisher and Officer William Constantineau approached Galibois and asked him to move away from the others standing at the intersection, which he did.  Constantineau told Galibois that although they could understand what he was trying to do, they had received complaints about "'a terrorist on the streets with a (rifle).'"  Proposed Am. Compl. at 6.

Fisher said that if Galibois continued his demonstration he would be subject to prosecution.  Galibois said he was only expressing a political opinion, as the other demonstrators were doing, but Fisher responded:  "'I'm not playing that game with you today.'"  Id. at 6-7.  Constantineau agreed with Fisher, and one of the officers said that Galibois was violating the disorderly conduct statute.  When Galibois suggested that "his political opponents" might have generated the complaints, Fisher responded that they had had several complaints and were compelled to respond.

When Galibois asked what he had to do to avoid arrest, Fisher told him that he had to abandon the toy gun and bandoliers and that he could not wear the ski mask.  Galibois protested removing his ski mask because the weather was chilly and breezy, and Fisher responded that he was not playing that game and that failure to comply would result in his arrest.  Fisher also said that the time it would take to process the arrest would mean that Galibois would not be free until after the polls were closed.  Galibois decided not to risk arrest, in part because he had not yet voted.

When asked, Galibois gave Constantineau his name, address, date of birth and home telephone number.  Constantineau checked the information in the police cruiser and then told Galibois that an arrest warrant was outstanding for a person of that name and requested his driver's license.  The arrest warrant was apparently for another person with the same name.

Galibois states that once he had complied with the officers' requirements, his appearance no longer provided "the irony" that was necessary to continue his anti-Kerry demonstration.  He was also concerned that Fisher might change his mind and arrest him.  Although he was never asked to leave, he gathered his belongings and went home.

Galibois alleges that sometime after the Election Day incident, Fisher made statements about him "personally and through proxies at the Nashua Police Department."  Proposed Am. Compl. ¶ 17.  Specifically, Galibois contends that Fisher or others at the police department stated publicly that the department had received multiple complaints about Galibois when only one phone call was received and that the complaints were made by alarmed citizens when actually the single call came from a city official who had noticed a traffic disruption.  Galibois also alleges that Fisher or someone at the department said that Galibois was found to be a traffic hazard, when he had not directly interfered with traffic, and that he was found at a school dressed as a terrorist when he was one-third of a mile from the nearest school.

Galibois seeks a declaratory judgment that Fisher deprived him of his constitutionally protected rights to freedom of expression, due process, and equal protection.  Fisher seeks punitive damages, compensatory damages, and an award of attorneys' fees and costs.

## Discussion

Galibois moves for leave to add a Fourth Amendment claim, an official capacity claim, and a defamation claim.  He also asks to

change his request for punitive damages from $208.00 to $1.00 and to add a claim for compensatory damages, for the defamation claim, in the amount of $1.00.  Fisher objects to Galibois's motion on the grounds that the new claims he asserts are futile and that no new facts have emerged through discovery to support his new claims.

Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  On the other hand, however, the court may deny a motion to amend in appropriate circumstances such as "undue delay, bad faith, futility, and the absence of due diligence on the movant's part."  Palmer v. Champion Mortgage, 465 F.3d 24, 30 (1st Cir. 2006).  "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)."  Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

A.  Fourth Amendment Claim

Galibois alleges that Fisher violated his Fourth Amendment right to be free of unreasonable seizure by stating that he, Galibois, would be subject to arrest, detention, and prosecution, which made him submit to Fisher's authority when Fisher lacked probable cause to detain him.  Fisher contends that such a claim

6

is futile and should not be permitted because it is not based on new facts that emerged during discovery.

In assessing futility, the court "take[s] as true all well-pleaded allegations and draw[s] all reasonable inferences in the plaintiff's favor." Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 5-6 (1st Cir. 2006) (providing standard under Fed. R. Civ. P. 12(b)(6)).  A motion to amend should not be denied on grounds of futility "'unless it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" Stanton v. Metro Corp., 438 F.3d 119, 123-24 (1st Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) (internal quotation marks omitted).

Although Galibois was not arrested, a brief investigatory stop "constitutes a seizure within the purview of the Fourth Amendment and, therefore, is subject to the constitutional imperative that it must be reasonable under all the circumstances." United States v. Coplin, 463 F.3d 96, 100 (1st Cir. 2006) (internal quotation marks omitted).  "An officer may conduct such a stop if he has reasonable, articulable suspicion that criminal activity is afoot." Id. (internal quotation marks omitted).  "In evaluating whether reasonable suspicion existed, we 'look at the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and

objective basis for suspecting legal wrongdoing.'"  United States v. Monteiro, 447 F.3d 39, 43 (1st Cir. 2006) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Galibois alleges that Fisher and Constantineau drove by his demonstration, then stopped and parked on a nearby street.  When the officers approached Galibois, Constantineau said that the department had received complaints about a "'terrorist on the streets with a (rifle)."  Galibois alleges that one of the officers said that he was violating the disorderly conduct statute.

New Hampshire's disorderly conduct statute states that "[a] person is guilty of disorderly conduct if: . . . [h]e or she: . . . [e]ngages in . . . threatening behavior in a public place; or [o]bstructs vehicular or pedestrian traffic on any public street or sidewalk . . . ."  RSA 644:2, II(a) & (c).  Galibois alleges that he was carrying a toy gun that resembled "an AK 47-style rifle."  Proposed Am. Compl. at 3.  He also alleges that he was wearing a terrorist costume, consisting of a ski mask and two "empty green ammunition bandoliers," which could be viewed as threatening behavior.  Id.  He further alleges that his demonstration, along with the others, obstructed both pedestrian and vehicular traffic.  Therefore, the circumstances that Galibois alleges led to the officer's interaction with him are

8

more than sufficient to show that the officers' had a reasonable articulable suspicion, when they arrived, that Galibois was engaged in disorderly conduct.

B.  Official Capacity

In his proposed amended complaint, Galibois states that Fisher "is being sued in both his official and personal capacities."  Proposed Am. Compl. ¶ 3.  A suit against a defendant in his official capacity is a suit against the entity of which he is an official.  See Surprenant v. Rivas, 424 F.3d 5, 20 (1st Cir. 2005).  To state a city's liability in this context, a plaintiff must allege facts which show that a city officer or official violated the plaintiff's constitutional rights pursuant to a city policy, custom, or practice.  Id.; Powell v. Alexander, 391 F.3d 1, 24 (1st ir. 2004).

Because Fisher is a police officer in Nashua, an official capacity suit against him is a suit against Nashua.  Galibois has not alleged any policy, custom, or practice in Nashua that would support his claim.  In addition, Nashua was not on notice that Galibois intended to bring claims against it.  See id.  Therefore, Galibois's official capacity claim is futile.

C.  Defamation

Galibois alleges that Fisher "made public statements that were intentional, false or misleading, and disparaging toward [Galibois] and that lowered [him] in the esteem of substantial and respectable groups of people."  Proposed Am. Compl. ¶ 25. Fisher contends that Galibois has not stated a defamation claim because the statements he cites are substantially true and because he does not allege to whom the statements were made.

To state a defamation claim under New Hampshire law, a plaintiff must allege facts showing that the "defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party."  Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, 138 N.H. 110, 118 (1993).  "A statement is defamatory if it tends to lower the plaintiff in the esteem of any substantial and respectable group of people."  Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 507 (1st Cir. 2002).  In addition, a statement is not false, and therefore is not actionable in a defamation claim, if it is substantially true. Id. at 509.

Galibois alleges that Fisher made "public statements" that defamed him.  Specifically, he alleges that Fisher's false statements were that the police had received multiple complaints

10

about him when only one call was received; that the complaints came from "alarmed citizens," when the single complaint was from a city official who was concerned about a traffic disruption; that he was a traffic hazard, when he was not in or obstructing the street, and that he was found at a school, dressed as a terrorist, when he was one-third of a mile from the nearest school.  As Fisher points out, those statements are substantially true, based on Galibois's allegations in his proposed amended complaint.

In addition, although Galibois alleges that Fisher made the allegedly defamatory remarks as "public statements," he does not explain to whom the statements were made.  The allegations in the complaint include only statements made to Galibois while Fisher and Constantineau talked with him during his demonstration. Galibois alleges that the officers asked him to move away from the group of other demonstrators, and he does not allege that others at the scene overheard the officers' conversation with him.  "Liability in defamation actions has traditionally rested upon the defendants's intention to communicate the defamatory statement to someone other than the plaintiff, or at least upon negligent responsibility for such communication."  Duchesnaye v. Munro Enters., Inc., 125 N.H. 244, 250 (1984).

Galibois's allegations in his proposed amended complaint do not state a defamation claim. Therefore, his defamation claim is also futile.

## Conclusion

For the foregoing reasons, the order denying the plaintiff's motion to amend his complaint (document no. 37) is vacated. The plaintiff's motion to amend his complaint (document no. 35) is denied to the extent he seeks to add a claim for a Fourth Amendment violation, an official capacity claim, and a defamation claim, those claims are futile and are not allowed, but his motion is otherwise granted. Therefore, the proposed amended complaint is allowed except for Counts II and IV and his claim against the defendant in his official capacity.

SO ORDERED.

                                         /s/ Joseph A. DiClerico, Jr.
                                         Joseph A. DiClerico, Jr.
                                         United States District Judge

April 18, 2007

cc:   Brian J.S. Cullen, Esquire
      Joseph f. Galibois, pro se