U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2007 APR 27 P 1:11

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Joseph P. Galibois</u>

    v.                              Civil No. 04-cv-444-JD

<u>John Fisher</u>

O R D E R

     Joseph P. Galibois, proceeding pro se, brings claims pursuant to 42 U.S.C. § 1983, against John Fisher, a sergeant in the Nashua Police Department, arising out of their interaction on Election Day in 2004. Galibois alleges that Fisher violated his First Amendment right to freedom of expression and his Fourteenth Amendment rights to due process and equal protection. Galibois moves for summary judgment on his First Amendment claim, and Fisher moves for summary judgment on all of Galibois's claims.

<u>Standard of Review</u>

     Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.

See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the respective nonmoving party.  <u>See</u> <u>id.</u> at 255; <u>Medeiros v. Vincent</u>, 431 F.3d 25, 29 (1st Cir. 2005).

## Background

On the morning of Election Day in 2004, Galibois drove to Nashua, New Hampshire, to demonstrate against the presidential candidacy of John Kerry.  He chose a site for his demonstration where twelve to fifteen people were carrying signs for candidates in a small public park, known as Library Hill, at a busy intersection in the city.  Galibois then changed into his costume to begin his demonstration.

Galibois's demonstration against Kerry consisted of dressing as a terrorist while holding a sign with "VOTE KERRY" (with the R's reversed) on one side and "BUSH" with a red circle and a line through it over the name on the other side.  He was wearing black sweat pants, a black hooded jacket, a black three-hole ski mask covering his face, two empty green ammunition bandoliers, and a plastic toy gun that resembled an AK-47 rifle on a shoulder

strap. In the course of his demonstration, Galibois bounced up and down, chanted and moved around, occasionally held his sign out into the street, and once walked out into the street to avoid other partisans who attempted to block him or his sign from view.

At about 1:30 p.m., the Nashua Police Department received a call that someone dressed as a terrorist with a mock machine gun was marching with a Kerry sign near the Amherst Street School. Nashua police officer William Constantineau responded to the call and was directed by another officer to Library Hill, which is near the school. Sergeant Fisher also responded to the call.

Constantineau and Fisher found Galibois at Library Hill in his costume and holding the sign. Constantineau told Galibois that the police had received complaints about a terrorist on the street carrying a rifle. Fisher told Galibois that he could be charged with disorderly conduct and that he would be arrested if he continued. When Galibois protested, Fisher responded, "I am not playing that game with you today."

Fisher instructed Galibois to remove the gun, bandoliers, and mask to avoid being arrested. Galibois understood the issue with the toy gun and bandoliers but argued that he should be allowed to wear the mask because it was the only hat he brought with him. Fisher again responded that he was not "playing that game" and gave Galibois four minutes to remove the gun,

bandoliers, and mask. Fisher also explained that if Galibois were arrested, the polls would be closed by the time he was released. Constantineau asked Galibois for identification information, which he provided.

Galibois complied with the requirement that he remove the gun, bandoliers, and mask. Without those accessories, however, he felt that his demonstration no longer expressed the message he had intended. Therefore, he gathered his costume and sign and left the area.

## Discussion

Galibois brings a claim under the First Amendment, alleging interference with his protected political speech, along with due process and equal protection claims under the Fourteenth Amendment, all arising from his interaction with Fisher on Election Day.[1] Galibois moves for summary judgment in his favor on his First Amendment claim. Fisher moves for summary judgment in his favor on all of Galibois's claims both on the merits and based on qualified immunity.

---

[1] Galibois does not bring claims against Officer Constantineau.

A.  First Amendment Claim

First Amendment protection "'has its fullest and most urgent application precisely to the conduct of campaigns for public office.'"  Buckley v. Valeo, 424 U.S. 1, 15 (1976) (quoting Monitor Patriot Co. v. Roy, 401 U.S. 265, 272 (1971)).  "The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech."  Virginia v. Black, 538 U.S. 343, 358 (2003).  Although not all conduct that is intended to convey a message is protected under the First Amendment, United States v. O'Brien, 391 U.S. 367, 376 (1967), Fisher does not dispute that Galibois's demonstration was expressive conduct.  He asserts that the restrictions he imposed on Galibois were permissible under the First Amendment.  Therefore, Galibois is entitled to summary judgment on the issue that his demonstration in costume was protected expressive conduct under the First Amendment.

The government cannot restrict expression simply because "a vast majority of its citizens believes [the expression] to be false and fraught with evil consequence."  Black, 538 U.S. at 358 (internal quotation marks omitted).  When protected expression is occurring in a public forum, the government "may impose reasonable, content-neutral, time, place, and manner restrictions."  Capitol Square Review & Advisory Bd. v. Pinette,

515 U.S. 753, 761 (1995).  To meet those requirements, the restrictions must be "'justified without reference to the content of the regulated speech, . . . narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication.'"  Asociation de Educacioin Privada de P.R., Inc. v. Garcia-Padilla, --- F.3d ---, 2007 WL 1064050, at *11 (1st Cir. Apr. 11, 2007).  If, however, a restriction is content-based rather than content-neutral, it violates the First Amendment unless "such a restriction is necessary, and narrowly drawn, to serve a compelling state interest."  Capitol Square, 515 U.S. at 761.

   1. Content-Based or Content-Neutral

   A restriction is content-based if its application depends on the message or subject matter of the expression.  Ark. Writers' Project, Inc. v. Ragland, 481 U.S. 221, 229-30 (1987).  In other words, the government is restricting the expression "'because of disagreement with the message it conveys.'"  Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 211 (1st Cir. 2002) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).  In contrast, a content-neutral restriction "neither advanc[es] nor imped[es] any particular viewpoints, but simply regulat[es] a particular mode of potentially expressive conduct . . . at a

6

particular place." Id.

As noted above, Galibois's message was that terrorists favored Kerry over Bush. Fisher restricted Galibois from using the toy gun, bandoliers, and mask as part of his terrorist costume because he concluded that by showing those items Galibois was acting in a threatening manner which was causing public alarm in violation of New Hampshire's disorderly conduct statute. Fisher did not interfere with the remainder of Galibois's costume or his sign that explained the significance of the costume, nor is there any evidence in the record that Fisher opposed Galibois's anti-Kerry message. Fisher did not order Galibois to stop demonstrating against Kerry. Therefore, Fisher's restriction was aimed at the manner of expression, not the message, and was content-neutral. Fisher is entitled to summary judgment on that issue.

### 2. Intermediate Scrutiny

Because Fisher's restriction on Galibois's costume was content-neutral, the court next considers whether it was "narrowly tailored to serve a significant governmental interest, and allow[ed] for reasonable alternative channels of communication." Swift, 284 F.3d at 212 (internal quotation marks omitted). "[N]arrow tailoring is satisfied so long as the

regulation promotes a substantial government interest that would be achieved less effectively without it, . . . or if the means chosen are not substantially broader than necessary to achieve the government's interest." Garcia-Padilla, 2007 WL 1064050, at *11 (internal quotation marks omitted). "[W]hen a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the [purpose of the restriction]." Hill v. Colorado, 530 U.S. 703, 726 (2000). Alternative means of communication need not employ the same means used in the intended expression. Id. at 729-30.

Fisher contends that his restriction on Galibois's costume served a significant government interest in protecting public order and allowing the free flow of pedestrian and vehicular traffic. He also contends that the restriction was narrowly tailored to accomplish that goal. Galibois contests those grounds, arguing that the record does not show that his demonstration was threatening public order or impeding traffic. He further argues that even if that were the case, Fisher's restriction on his costume was not narrowly tailored to meet those goals.

Municipalities have a significant interest in protecting

public order and regulating traffic flow on streets and sidewalks.  See, e.g., Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 768 (1994); Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1039 (9th Cir. 2006); Am. Arab Anti-Discrimination Comm. v. City of Dearborn, 418 F.3d 600, 604-05 (6th Cir. 2005); Faustin v. City & County of Denver, 423 F.3d 1192, 1200 (10th Cir. 2005); Cox v. City of Charleston, 416 F.3d 281, 283 (4th Cir. 2005).  The record is not clear, however, to what extent Galibois was actually disrupting public order or the flow of traffic.

Although Fisher contends that Galibois was threatening and causing public alarm, the record suggests that the toy gun was obviously not real, and it is undisputed that the bandoliers were empty.  The record does not show to what extent Galibois's activities, as differentiated from the other supporters of political candidates, were disrupting the traffic flow on the streets or sidewalks in the area.  Therefore, although Galibois's demonstration was protected expressive conduct and Fisher's restrictions were content-neutral, neither Galibois nor Fisher has shown that he is entitled to summary judgment on the First Amendment claim based on the remainder of the time, place, and manner analysis.

B.  Fourteenth Amendment Claims

Galibois contends that Fisher's restrictions on his demonstration against Kerry also violated his rights to due process and to equal protection under the Fourteenth Amendment. Specifically, Galibois alleges that Fisher coerced him into removing the gun, bandoliers, and mask when no law prohibited him from wearing those items and when he wore them for legitimate purposes.  Fisher seeks summary judgment on Galibois's Fourteenth Amendment claims.

1.  Due Process

The Fourteenth Amendment protects against governmental deprivation of life, liberty, or property without due process. Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 52 (1st Cir. 2006). That requirement, however, applies only to protected interests. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7 (1st Cir. 2005).  Galibois contends that he had a protected liberty interest to choose the clothes he wanted to wear in public, specifically the ski mask.[2]  See, e.g., Zalewska v.

---

[2] Although Galibois does not allege whether he was invoking substantive or procedural due process, the context does not support a procedural due process claim, which would be that he was deprived of a protected interest without constitutionally adequate process.  See, e.g., SFW Arecibo, Ltd. v. Rodriguez, 415 F.3d 135, 139 (1st Cir. 2005);  Tower v. Leslie-Brown, 326 F.3d

10

County of Sullivan, New York, 316 F.3d 314, 321-22 (2d Cir. 2003) (noting broader liberty interest of general public as opposed to public employees in choosing apparel).

Despite recasting his claim within the context of a liberty interest protected by the due process clause of the Fourteenth Amendment, Galibois's claim remains, in essence, a First Amendment claim. The due process clause is not an appropriate means to address a First Amendment issue. See, e.g., Pagan v. Calderon, 448 F.3d 16, 33 (1st Cir. 2006); Canady v. Bossier Parish Sch. Bd., 240 F.3d 437, 444 (5th cir. 2001). Therefore, Fisher is entitled to summary judgment on Galibois's due process claim.[3]

### 2. Equal Protection

Galibois contends that Fisher's restrictions on his demonstration violated the equal protection clause of the

---

290, 299 (1st Cir. 2003). Galibois raises no issue as to the adequacy of the process available to him.

[3]Even if Galibois's claim were considered on the merits, as a matter of law, Fisher's direction to remove the mask does not meet the conscience-shocking standard. See Pagan, 448 F.3d at 32 ("Where, as here, a plaintiff's substantive due process claim challenges specific acts of a state officer, the plaintiff must show both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property.").

Fourteenth Amendment because he was singled out from the group of political demonstrators of which he was a part.  He contends that restrictions were applied to him based on his protest against Kerry.  That theory, however, is not supported by the record which establishes that Fisher's restrictions were content-neutral.

When a plaintiff is not a member of a suspect class, but instead consists of a "'class of one,'" to prove an equal protection violation, he must show that he "'was intentionally treated differently than others <u>similarly situated</u>'" and that no rational basis existed for the difference in treatment.  <u>Buchanan v. Maine</u>, 469 F.3d 158 177 (1st cir. 2006) (quoting <u>Buchanan v. Maine</u>, 417 F. Supp 2d 24, 37 (D. Me. 2006)).  Galibois contends that he was similarly situated to the other demonstrators in the park because they too were causing a breach of the peace.  The record shows, however, that Galibois was singled out because he was dressed as a terrorist, carrying a toy gun, and because a complaint was made about his appearance.  Whether or not others were breaching the peace, Galibois has not shown any evidence that other demonstrators were dressed as terrorists, were wearing potentially threatening costumes, or that a complaint was made to the police against anyone else.

Based on the record in this case, no trialworthy issue

exists as to Galibois's equal protection claim.  Fisher is entitled to summary judgment on that claim.

C.  Qualified Immunity

When a plaintiff alleges a violation of a constitutional right, the defendant is entitled to qualified immunity unless "the right was 'clearly established' so that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Jennings v. Jones, 479 F.3d 110, 118 (1st Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).  Because qualified immunity protects defendant officials from the burdens of litigation including standing trial, the doctrine applies even in cases that do not involve money damages. See Mitchell v. Forsyth, 472 U.S. 511, 525-27 (1985).[4]

Fisher contends that the law was not clearly established that his restriction on Galibois's demonstration would violate Galibois's constitutional rights.  In the qualified immunity context, the asserted right must be clearly established in a way that is relevant or particularized to the circumstances of the

---

[4]Post trial, however, it would appear that qualified immunity provides no benefit for a defendant in a case that does not include a claim for money damages.  See Acevedo-Garcia v. Monroig, 352 F.3d 547, 562 n.6 (1st Cir. 2003); Malik v. Brown, 16 F.3d 330, 335 n.4 (9th Cir. 1994); Mumford v. Zieba, 4 F.3d 429, 435 96th Cir. 1993).

13

case. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Therefore, "the law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." Jennings, 479 F.3d at 124 (internal quotation marks omitted).

Because summary judgment is granted in Fisher's favor on the Fourteenth Amendment claims, the court considers qualified immunity only in the context of Galibois's First Amendment claim. At the time of Galibois's demonstration on Election Day in 2004, it was clearly established that even a content-neutral restriction on the manner of presenting a political message in a public forum would violate the First Amendment if it were not narrowly tailored to address a substantial government interest. See, e.g., Hill, 530 U.S. at 716-18; Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984); United States v. Grace, 461 U.S. 171, 177 (1983); United States v. O'Brien, 391 U.S. 367, 376 (1968); Church of the Am. Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 205-06 (2d Cir. 2004); Swift, 284 F.3d at 210; Mason v. Wolf 356 F. Supp. 2d 1147, 1162 (D. Colo. 2005) (holding that by 2002 law was clearly established to require narrowly tailored restriction enforcing a significant government

interest to avoid First Amendment prohibition). As long as the clearly established law gives notice that the alleged conduct is unlawful, prior cases need not present identical factual circumstances. <u>Jennings</u>, 479 F.3d at 143.

Indeed, the record shows that Fisher was aware at the time that Galibois's demonstration was protected by the First Amendment. His awareness of the law is further demonstrated by his limited restriction on Galibois's costume, that is, Fisher did not prohibit the demonstration in its entirety, but instead focused on certain parts of the costume. Whether Fisher's limitations on Galibois's demonstration fit within permissible restrictions on the manner of expression depends on disputed facts. Therefore, as the applicable law was clearly established, Fisher is not entitled to summary judgment based on qualified immunity on the narrow basis he asserts.

## Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 40) is granted on the issue that his demonstration was protected expressive conduct and is otherwise denied. The defendant's motion for summary judgment (document no. 41) is granted on the issue that his restriction on the plaintiff's demonstration was content-neutral and on the

15

plaintiff's Fourteenth Amendment claims, and it is otherwise denied.  The plaintiff's assented-to motion for a hearing on the parties' motions for summary judgment (document no. 48) is denied as the court is not persuaded that additional argument about factual matters, as proposed in the motion, would provide assistance to the court.

The claim that remains for trial in this case seeks a declaratory judgment that the defendant's requirement that the plaintiff remove his toy gun, bandoliers, and mask, although content-neutral, violated the First Amendment.  The plaintiff seeks ONLY a declaratory judgment and not money damages, as his claim for money damages was not included in his amended complaint, which was allowed in part April 18, 2007.


SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

April 27, 2007

cc: Joseph F. Galibois, Pro Se
    Brian J. S. Cullen, Esquire